**ABRAMSON & DENENBERG, P.C.**
By:  Alan E. Denenberg, Esq.
Identification No. 54161
1315 Walnut Street, Suite 500
Philadelphia, PA 19107
(215) 546-1345

**THE CHAVEZ-FREED LAW OFFICE**
By:  Leticia C. Chavez-Freed, Esq.
Identification No. 323615
2600 N. 3rd Street
Harrisburg, PA 17110
(717) 893-5698

## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| **JOHNJUAN WHITE, AS ADMINISTRATOR OF THE ESTATE OF JIMMY KING, DECEASED,** ) | |
| ) | **JURY TRIAL** |
| **Plaintiff,** ) | **DEMANDED** |
| ) | |
| **v.** ) | **No. 1:22-cv-01241-CCC** |
| ) | |
| **DAUPHIN COUNTY, PRIMECARE MEDICAL, INC., WARDEN GREGORY BRIGGS,** ) | **CIVIL ACTION** |
| **CEO THOMAS WEBER, ESQ., DR. CARL HOFFMAN, PRISON STAFF McCLERG,** ) | |
| **VENTURA, PECHO, RODRIGUEZ, and** ) | |
| **JOHN/JANE DOE 1-10, and MEDICAL PROVIDERS, TYKEISHA METZ, KATELIN** ) | |
| **WRIGHT, JOSEPH MACUT , JESSICA NYE, TIFFANY LONG, ADDONNA THOMAS,** ) | |
| **SHAYNE GOODMAN, TIFFANY LONG, KAYLA ZELDERS-HEICHEL, ADAM** ) | |
| **BOERMAN,WILLIAM YOUNG, GARRETT ROSAS, ANGELA BARNETT, CHEREE** ) | |

SULTZBACH, JOHANNA RIEDEL, JESSICA    )
GLASPER, SHARON CHRISTIE, MELISSA
BARBOSA, MILDRED MONTALVO,            )
DOUGLAS EASH, SUSAN DELOE,
TIA DRABICH, STEPHANIE DIETZ, TRACY P.,  )
KATIE S., GINA F., and JOHN/JANE DOE 1-10,
                                      )
        **Defendants.**

_____


## PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS FILED BY DEFENDANTS PRIMECARE, CEO THOMAS WEBER, DR. CARL HOFFMAN AND INDIVIDUAL MEDICAL PROVIDERS


**Respectfully Submitted,**


**THE CHAVEZ-FREED LAW OFFICE**

*Leticia Chavez-Freed*

By:  Leticia C. Chavez-Freed, Esq.
Identification No. 323615
2600 N. 3rd Street
Harrisburg, PA 17110
(717) 893-5698


**ABRAMSON & DENENBERG, P.C.**

*Alan Denenberg*

By:  Alan E. Denenberg, Esq.
Identification No. 54161
1315 Walnut Street, Suite 500
Philadelphia, PA 19107
(215) 546-1345

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ..................................................... ii

I.      COUNTER STATEMENTS OF THE FACTS ....................................................1

II.     STANDARD OF REVIEW ...................................................6

III.    PRELIMINARY STATEMENT ...............................7

IV.     LEGAL ARGUMENT ..........................................8

        A.  DEFENDANTS' DELIBERATE INDIFFERENCE TO THE
            DECEDENT'S PLEAS FOR MEDICAL ASSISTANCE VIOLATED 42
            U.S.C. § 1983 ...................................................................8
        B.  DEFENDANTS ADOPTED AND MAINTAINED POLICIES THAT
            VIOLATE A PRISONER'S RIGHT TO ADEQUATE MEDICAL CARE
            AND FAIL TO PROPERLY SUPERVISE THEIR STAFF, SAID ACTS
            AND OMISSIONS BEING IN VIOLATION OF 42 U.S.C. § 1983 .............13
        C.  DEFENDANTS ARE LIABLE FOR NEGLIGENCE, GROSS
            NEGLIGENCE AND VICARIOUS LIABLILITY, WHILE
            DEFENDANT PRIMECARE ALONE IS LIABLE FOR CORPORATE
            AND GROSS NEGLIGENCE.......................................................16
        D.  THE TOTALITY OF THE CIRCUMSTANCES COMPEL THE
            CONCLUSION THAT THE DEFENDANTS PARTICIPATED IN A
            CIVIL CONSPIRACY TO VIOLATE DECEDENT'S
            CONSTITUTIONAL RIGHTS ......................................................18
        E.  DEFENDANTS ARE LIABLE FOR DECEDENTS'S DEATH
            PURSUANT TO 42 PA.C.S. § 8301 AND § 8302 ........................................20
V.      CONCLUSION................................................................22

CERTRIFICATE OF WORD COUNT ...................................................24

CERTIFICATE OF SERVICE ...............................................25

**TABLE OF AUTHORITIES**

**CASES:**

*Ashcroft v. Iqbal,*
  556 U.S. 662, 678 (2009)...............................................................................7

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, 555 (2007)...............................................................................6

*Berg v. Allegheny Cty.,*
  219 F.3d 261 (3d Cir. 2000) ..........................................................................9

*Chambers v. Pennsylvania,*
  :04-cv-0714, 2006 U.S. Dist. LEXIS 93658, at *29-30 (M.D. Pa. Dec. 28,
  2006) (citing *Hampton v. Hanrahan,* 600 F.2d 600, 621 (7th Cir.
  1979), *rev'd in part on other grounds,* 446 U.S. 754 (1980))...................... 23

*Estelle v. Gamble,*
  429 U.S. 97, 103 (1976)(indifference to inmates medical needs)..................9

*Fultz v. AFSCME, Counsel 13,*
  2 No. 20-cv-2107, 2021 U.S. Dist. LEXIS 135406, at *10-11 (M.D. Pa.
  July 16, 2021)..................................................................................................6

*Graham v. Connor,*
  2490 U.S. 386 (1989)......................................................................................9

*Gregg v. Georgia,*
  428 U.S. 153 (1976).................................................................................... 10

*Helling v. McKinney*
  509 U.S. 25 (1993)..........................................................................................9

*Jutrowski v. Twp. of Riverdale,*
  904 F.3d 280, 294 n.15 (3d Cir. 2018) (quoting *Barnes Found. v. Twp. of
  Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001))...................................... 23

*Lewis v. Allegheny Ludlum Corp.,*
  2013 U.S. Dist. LEXIS 109999 at *7-8 (W.D. Pa. Aug. 2, 2013), *aff'd,*
  2014 U.S. App. LEXIS 16544 (3d Cir. Aug. 27, 2014)(cit. omitted) .............6

*Montgomery v. Pinchak,*
   294 F.3d 492, 499 (3d Cir. 2002) ......................................................6

Riley, et al., v. Clark, et al.,
   4:20-cv-00325 (M.D. Pa.) ..............................................................14

*Rouse v. Plantier*
   182 F.3d 192, 197 (3d Cir. 1999) ................................................ 10

*Scales v. Witherite,*
   2011 U.S. Dist. LEXIS 127011 at *9-10 (M.D. Pa. July 13, 2011)...............6

*Stoneroad v. Johnson,*
   2020 U.S. Dist. LEXIS 63389 at *39 (M.D. Pa. Apr. 6, 2020).................. 24

*West v. Atkins,*
   487 U.S. 42 (1988)........................................................................9

*West Run Student Housing Assoc., LLC v. Huntington Nat'l Bank,*
   712 F.3d 165, 171 (3d Cir. 2013) ....................................................8

*Western Mining & Mineral Co., v. Fox Rothchild LLP,*
   615 F.3d 159, 178 (3d Cir. 2010) ....................................................9

**U.S. CONSTITUTION:**

Amend. VIII ...............................................................................9

Amend. XIV .............................................................................. 10

**STATUTES:**

42 U.S.C. §1983 ...................................................................... 9, 13

**RULES:**

F.R.C.P., Rule 12(b)(6) .................................................................7

# I.  COUNTERSTATEMENT OF FACTS

On or about August 7, 2020, Jimmy King (Decedent) was arrested and charged with retail theft, reckless driving and related offenses [ECF 27, ¶19]. Because the Decedent did not have the funds needed to post bail, he was taken to Dauphin County Prison (Defendant Prison), booked and incarcerated as a pretrial detainee [ECF 27, ¶ 20].

Within two days -- on August 9th -- Decedent was assaulted by his cellmate, Michael Caputo [ECF 27, ¶ 21].  The assault was captured on Defendant Prison's surveillance camera [ECF 27, ¶ 21].  That day, the Individual Medical Providers looked Decedent over, and noted that he had a gash above his left eye and bruised/broken ribs. [ECF 27, ¶ 22]. Despite the noted injuries, the Individual Medical Providers did not bother to provide Decedent with medical care or treatment [ECF 27, ¶ 23].  They failed to do any tests to determine whether Decedent suffered a brain injury [ECF 27, ¶¶ 24, 25].  Instead and, rather surprisingly, the Defendant medical staff indicated that Decedent had no injuries. [ECF 27, ¶ 23].

The Defendant Prison acted just like the Individual Medical Providers. When the Defendant Prison issued its Extraordinary Occurrence Report which documented the August 9th assault, it noted that there was no injury to Decedent [ECF 27, ¶ 44].

On August 10, 2020, Decedent filed a Medical Request Slip complaining of a severe headache. [ECF 27, ¶ 26]. Even though a severe headache is a primary symptom of a traumatic brain injury, the Individual Medical Providers again failed to provide Decedent with medical care or treatment or otherwise conduct any test to determine whether he had a traumatic brain injury. *Ibid.*

Decedent's headaches persisted and, on August 12, 2020, he advised the Individual Medical Providers that he was still experiencing headaches. [ECF 27, ¶ 27]. He was also experiencing shortness of breath -- an another symptom of traumatic brain injury -- and so advised them. *Ibid.* For a third time, the Individual Medical Providers failed to provide Decedent with medical treatment or care for the injuries he sustained on August 9th. *Ibid.* And for the third time, the Individual Medical Providers failed to conduct diagnostic tests to determine the cause of Decedent's headaches and shortness of breath, both of which are symptomatic of traumatic brain injury. *Ibid.*

On August 14, 2020, Decedent was involved in an incident with inmate Sylvester Strand for which he was secured by Defendant Rodriguez, taken back to his cell, and written up for disciplinary action [ECF 27, ¶ 28]. When Decedent was returned to his cell, he was again assaulted by either inmate Strand and/or Defendants McClerg, Ventura, Pecho, Rodriguez and/ John/Jane Doe 1-10 [ECF 27, ¶ 29]. During the assault, Decedent was struck in the face/head with a hard

2

object -- a tablet or iPad -- which caused a visible contusion above Decedent's right eye. *Ibid*.  Even though Decedent suffered two blows to the head within five (5) days, the Individual Medical Providers never provided him medical care or treatment [ECF 27, ¶ 30].

The Defendant Prison issued an Extraordinary Occurrence Report regarding the Decedent's August 14th disciplinary violation and like the Report issued on August 9th, the Defendant Prison ignored the fact of Decedent's injuries.  This time it omitted altogether any reference to Decedent's suffering any injury or being struck in the head [ECF 27, ¶ 45].

On August 19, 2020, Decedent informed the Individual Medical Providers that he was suffering from severe headaches, chest pain, breathing difficulty and sleeplessness. [ECF 27, ¶ 31].  Decedent's medical records document that he expressly told the Individual Medical Providers that "it felt like he was bleeding into his brain" [ECF 27, ¶ 32].  His medical records also confirm that he had "complaints of headaches since being hit in the head with a tablet on 08-14-2020." [ECF 27, ¶ 31]. Notwithstanding Decedent's complaints of symptoms which are consistent with life threatening traumatic brain injury, the Individual Medical Providers provided no medical care or treatment.  They failed to conduct proper diagnostic testing to determine the cause of his symptoms or otherwise rule out a

traumatic brain injury [ECF 27, ¶ 33].  Incredibly, the Individual Medical

Providers informed Decedent that there was nothing they could do for him. *Ibid.*

On August 20, 2020, Decedent could not tolerate the severe headaches

anymore, and he began screaming from the pain and pleading for medical attention

[ECF 27, ¶ 34].  It was obvious to even a lay person that Decedent's medical

condition was rapidly deteriorating; yet, the Individual Medical Providers provided

neither medical treatment nor proper diagnostic testing to determine the scope of

Decedent's injuries, including whether he had a traumatic brain injury [ECF 27, ¶

35].

At approximately 3:00 a.m. on August 21, 2020, Decedent was found

unresponsive and face down in his cell in a pool of vomit [ECF 27, ¶ 36].  The

EMS and Defendant prison staff transported Decedent to Milton S. Hershey

Medical Center.  *Ibid.*   When they arrived, the EMS and Defendant prison staff

informed the treating physicians that prior to becoming unconscious, Decedent said

that "it felt like he was bleeding into his brain" [ECF 27, ¶ 39].  They also advised

the treating physicians that Decedent "was struck in the head with an electronic

tablet approximately four days prior, after which he began to report headaches"

[ECF 27, ¶ 38].

Medical personnel at Hershey Medical Center intubated Decedent and

conducted a CT scan [ECF 27, ¶ 37].  The scan revealed revealed that Decedent

suffered from an acute subdural hematoma. *Ibid.*  Shortly thereafter, Hershey

Medical determined that Decedent had no brain activity. *Ibid.*

On or about August 29, 2020, Decedent passed away [ECF 27, ¶ 40].  The

Dauphin County Coroner's Office performed an autopsy and noted that Decedent

had contusions and bilateral swelling on the upper and lower eyelids, as well as a

contusion and swelling on his upper lip [ECF 27, ¶ 41]. The Defendant Prison and

Defendant Warden Briggs conceded to the Coroner that "the Decedent was struck

four days prior to being found unresponsive" [ECF 27, ¶ 45].  The Coroner's

Report concluded that the cause of Decedent's death was homicide due to

complications of traumatic brain injury.  [ECF 27, ¶ 42].  The Report also

documented the information provided by the Defendant Prison and Defendant

Warden Briggs, namely that "the Decedent was struck four days prior to being

found unresponsive" [ECF 27, ¶ 43].

The Defendant County subsequently held a press conference in which it

acknowledged Decedent's death, but omitted any reference whatsoever to the

August 14th assault on Decedent.  [ECF 27, ¶ 46].  Instead, the Defendant County

focused on the earlier assault on August 9th during which Caputo struck Decedent

in the face/head and ribs. *Ibid*.  Even though the Coroner determined that Decedent

was murdered, the Defendant County informed the public that no murder charges

would be filed. *Ibid*.  Purposely relying on the August 9th altercation while

ignoring the August 14th assault, the Defendant County tried to justify its decision to forego murder charges by claiming that Caputo's attack upon Decedent was in "self defense." *Ibid*.

## II.  STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, a court must accept as true all material allegations, read the complaint in the light most favorable to the plaintiff, and decide whether, under any reasonable understanding of the complaint, the plaintiff may be entitled to relief.   The complaint must simply give the defendant "fair notice of what plaintiff's claim is, and the grounds upon which it rests." *Scales v. Witherite*, 2011 U.S. Dist. LEXIS 127011 at *9-10 (M.D. Pa. July 13, 2011).  There is no requirement that the complaint include every fact known to the plaintiff or that it articulate a "precise legal theory." Id. at *11. Rather, it must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

. To survive such a motion, the complaint must include sufficient allegations, taken as true, to state a facially plausible claim to relief.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Montgomery v. Pinchak,*

*Montgomery v. Pinchak,*
*v. Allegheny Ludlum Corp*. 2013 U.S. Dist. LEXIS 109999 at *7-8 (W.D. Pa. Aug. 2, 2013), *aff'd*, 2014 U.S. App. LEXIS 16544 (3d Cir. Aug. 27, 2014)(cit. omitted).

*Fultz v. AFSCME, Counsel 13,* No. 20-cv-2107, 2021 U.S. Dist. LEXIS 135406, at *10-11 (M.D. Pa. July 16, 2021).  The plausibility standard is met if the facts in the complaint, taken as true, permit the court to "draw the reasonable inference" that the defendant is liable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Simply put, the plausibility standard requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." *See Twombly*, *supra*, 550 U.S. at 556.

## III.  PRELIMINARY STATEMENT

The allegations in complaint strongly suggest Defendants' culpability for Decedent's injury and death and, any claim to the contrary strains credulity.  Yet, Defendants boldly misrepresent the facts in a feckless attempt to avoid liability. For example, Defendants identify Plaintiff's November 8, 2022 amended complaint as the operative document for this court's review, but then falsely claim that the amended complaint "does not contain claims against Addonna Thomas or Shayne Goodman" and "thus, it appears Plaintiff has abandoned claims against these individuals" [ECF 33 at 8].  However, a cursory review of the amended complaint reveals that both Defendants are squarely identified in the caption and are specifically included and named in the allegations pertaining to the Individual Medical Providers.

Next, the Defendants audaciously and impermissibly state: "Plaintiff did
originally allege, however that [Decedent] was provided 'inappropriate'
treatment of an x-ray, Tylenol and blood pressure medication"  [ECF 33 at
9].  The reference to an x-ray and medication is **nowhere** to be found in the
amended complaint.  It is a basic principle of civil procedure that an
"amended complaint 'supersedes the original and renders it of no legal effect,
unless the amended complaint specifically refers to or adopts the earlier
pleading.'" *See West v. Atkins*,
 *Student Housing Assoc., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir.

2013)(cit. omitted). Accordingly, Defendants' misrepresentations about Defendants

Thomas and Goodman, as well as their to withdrawn and superseded allegations

should be stricken from their brief.

It is apparent that Defendants want this Court to believe that they provided

some medical treatment to the Decedent in order to create a factual predicate for \

their argument that Plaintiff's complaint merely alleges a difference of opinion as

to what medical treatment was appropriate [ECF 33 at 16].  This argument is a

mischaracterization of Plaintiff's allegations and a thinly veiled attempt to

camouflage the obvious, namely that Defendants deliberately ignored the

Decedent's conspicuous and life threatening medical condition which resulted in

his death -- a death that was foreseeable and preventable.


## IV.  LEGAL ARGUMENT

### A.  DEFENDANTS' DELIBERATE INDIFFERENCE TO THE DECEDENT'S PLEAS FOR MEDICAL ASSISTANCE VIOLATED 42 U.S.C. §1983.

42 U.S.C. §1983 provides that a person acting under color of state law is liable for violating the constitutional rights of any individual. Medical providers, as Defendants, who contract with prisons to provide inmates and detainees with medical care are State actors for purposes of §1983.  *See* Amend. VIII

487 U.S. 42 (1988). *See also Gregg v. Georgia,* 428 U.S. 153 (1976).   The statute is not a source of substantive rights, but a legal mechanism for suing a public official who has violated an individual's constitutional rights.  *See Graham v. Connor*, 490 U.S. 386 (1989); *Berg v. Allegheny Cty.*, 219 F.3d 261 (3d Cir. 2000). In this matter, the underlying constitutional violations are failure to provide adequate medical care, unconstitutional practice or custom, and failure to supervise *See* U.S. Const. Amend. VIII and XIV.

When medical providers are "deliberately indifferent to a prisoner's serious medical needs by 'intentionally denying or delaying access to medical care," they violate the prisoner's right to be free from cruel and unusual punishment.  *See Estelle v. Gamble,* 429 U.S. 97, 104-105. *See* also *Helling v. McKinney*, 509 U.S. 25 (1993). This is because "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,'" *Estelle, supra* 429 U.S. at 104, citing *Gregg, supra,* at 428 U.S. at 173.   This requires a showing

that "the defendants were deliberately indifferent to the prisoner's medical needs" and that "those needs were serious." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999). *See* also *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).

In this matter, Decedent repeatedly complained to Defendants about his serious health condition, i.e., a traumatic brain injury [ECF 27, ¶¶ 27, 31-32, 34, and 38-39]. Defendants CEO Thomas Weber, Esq., Corporate Medical Director Dr. Carl Hoffman;  and Medical Providers Tykeisha Metz, Katelin Wright, Joseph Macut, Jessica Nye, Tiffany Long, Addonna Thomas, Shayne Goodman, Tiffany Long, Kayla Zelders-Heichel, Adam Boerman, William Young, Garrett Rosas, Angela Barnett, Cheree Sultzbach, Johanna Riedel, Jessica Glasper, Sharon Christie, Melissa Barbosa, Mildred Montalvo, Douglas Eash, Susan Deloe, Tia Drabich, Stephanie Dietz, Tracy P., Katie S., Gina F., Tracy P., Katie S., Gina F., and/or John/Jane Does (the Individual Medical Providers) were aware of Decedent's serious medical need. *Ibid*.

It began on August 9, 2020 when Decedent was struck in the face/ribs by Caputo.  The Individual Medical Providers noted the Decedent's injuries, but they did not bother to provide Decedent with medical care or treatment [ECF 27, ¶ 23]. They failed to do any tests to determine whether Decedent suffered a brain injury [ECF 27, ¶¶ 24-25].  Instead, and rather surprisingly, the Individual Medical Providers indicated that Decedent had no injuries. [ECF 27, ¶ 23].

On August 10, 2020, Decedent filed a Medical Request Slip complaining of a severe headache.  [ECF 27, ¶ 26].  Even though a severe headache is a primary symptom of a traumatic brain injury, the Individual Medical Providers again failed to provide Decedent with medical care or treatment or otherwise conduct any test to determine whether he had a traumatic brain injury. *Ibid.*

Decedent's headaches persisted and, on August 12, 2020, he advised the Individual Medical Providers that he was still experiencing headaches. [ECF 27, ¶ 27].  He was also experiencing shortness of breath -- an another symptom of traumatic brain injury -- and so advised the the Individual Medical Providers.  *Ibid.* For a third time, the Individual Medical Providers failed to provide Decedent with medical treatment or care for the injuries he sustained on August 9th. *Ibid.*   And for the third time, the the Individual Medical Providers failed to conduct diagnostic tests to determine the cause of Decedent's headaches and shortness of breath, both of which are symptomatic of traumatic brain injury. *Ibid.*

On August 14, 2020, Decedent was involved in an incident which resulted in another head injury [ECF 27, ¶ 29].  During the assault, Decedent was struck in the face/head with a hard object -- a tablet or iPad -- which caused a visible contusion above Decedent's right eye. *Ibid.*  Even though Decedent suffered two blows to the head within five (5) days, the Individual Medical Providers never provided him medical care or treatment [ECF 27, ¶ 30].

On August 19, 2020, Decedent informed the Individual Medical Providers that he was suffering from severe headaches, chest pain, breathing difficulty and sleeplessness. [ECF 27, ¶ 31].  Decedent's medical records document that he expressly told the Individual Medical Providers that "it felt like he was bleeding into his brain" [ECF 27, ¶ 32].  His medical records also confirm that he had "complaints of headaches since being hit in the head with a tablet on 08-14-2020." [ECF 27, ¶ 31].  Notwithstanding Decedent's complaints of symptoms which are consistent with life threatening traumatic brain injury, the Individual Medical Providers provided no medical care or treatment.  They failed to conduct proper diagnostic testing to determine the cause of his symptoms or otherwise rule out a traumatic brain injury [ECF 27, ¶ 33].  Incredibly, the Individual Medical Providers informed Decedent that there was nothing they could do for him. *Ibid.*

On August 20, 2020, Decedent could not tolerate the severe headaches anymore, and he began screaming from the pain and pleading for medical attention [ECF 27, ¶ 34].  It was obvious to even a lay person that Decedent's medical condition was rapidly deteriorating; yet, the Individual Medical Providers provided neither medical treatment nor proper diagnostic testing to determine the scope of Decedent's injuries, including whether he had a traumatic brain injury [ECF 27, ¶ 35].  In fact, Decedent -- untrained in medicine -- correctly self-diagnosed his condition when he said that felt like he was "bleeding into his brain" As a result,

the Decedent passed away on August 29, 2020 from a subdural hematoma [ECF 27, ¶ 40].

The Individual Medical Providers repeatedly resisted doing any testing that was appropriate to Decedent's complaints and symptoms.  They repeatedly failed to determine the extent of Decedent's injuries, including whether he suffered from a traumatic brain injury [ECF 27, ¶ 35.  Thus, the Individual Medical Providers -- in their individual capacities -- acted so heartlessly as to constitute malicious, intentional and reckless disregard for Decedent's well being.

**B. DEFENDANTS ADOPTED AND MAINTAINED POLICIES THAT VIOLATE A PRISONER'S RIGHT TO ADEQUATE MEDICAL CARE AND FAIL TO PROPERLY SUPERVISE THEIR STAFF, SAID ACTS AND OMISSIONS BEING IN VIOLATION OF 42 U.S.C. §1983.**

Defendants PrimeCare Medical, Inc., CEO Thomas Weber, Esq., and/or Corporate Medical Director Dr. Carl Hoffman have for many years adopted and maintained a policy, custom, and/or practice of condoning and/or acquiescing to the violation of the constitutional rights of citizens, including, but not limited to, denying medical care to pretrial detainees and remaining deliberately indifferent to the serious medical needs of pretrial detainees [ECF 27 , ¶ 97].

It is undisputed that Defendants knew that their policies, customs and practices endangered inmates and pretrial detainees [ECF 27, ¶101]. These unconstitutional customs, policies, and/or practices are documented in numerous

accounts of inmates at the Defendant Prison who were denied medical care. These include: at least twenty-six (26) inmates died in the Defendant Prison between 2009 and January of 2022, including the highest rate of inmate deaths in all of Pennsylvania in 2019. This prompted the Defendant County to hire an expert to audit the Prison in 2021. *Vendel, Christine, "Man Died in Dauphin County Prison, Marking the 5th Death in 10 Months", PennLive, January 31, 2022, available at* https://www.pennlive.com/news/2022/01/man-dies-in-dauphin-county-prison-marking-the-5th-death-in-10-months.html; and the complaint of Riley, et al., v. Clark, et al., 4:20-cv-00325 (M.D. Pa.), in which Plaintiffs allege defendant prison staff used excessive force in repeatedly beating a pretrial detainee about the head and body and then offered no medical treatment for his injuries, ultimately causing his death, on June 18 – 26, 2019 [ECF 27, ¶103].

The Defendants have knowingly adopted and maintained for many years unconstitutional customs, policies, and/or practices and have been deliberately indifferent to the systemic abuses which direct resulted therefrom. They have turned a blind eye to the abuses and refuse to conform their customs, policies and/or practices to be constitutionally compliant. Consequently, their existing customs, policies and/or practices increase the risk of danger to inmates such as Decedent, which ultimately caused Decedent's injuries and death [ECF 27, ¶ 100].

The Defendants' unlawful customs, policies and practices include: failing to have and/or enforce appropriate medical care procedures, policies, and training to prevent prison staff and medical providers from denying inmates necessary medical care and/or diagnostic testing; failing to have and/or enforce appropriate procedures, policies, and training to respond to information regarding medical needs of inmates; failing to have and/or enforce adequate testing, hiring, training, supervision, and discipline to ensure prison staff act to prevent and/or intervene in prison staff and medical providers denying adequate care to inmates. *Ibid*. Even worse, Defendants being aware of these unconstitutional customs, policies and/or practices for a substantial period of time, persist in their refusal to remediate these violations [ECF 27, ¶ 101].

In terms of supervision, the Defendant PrimeCare Medical, Inc., Defendants Weber and Hoffman, and the Individual Medical Providers have failed to take affirmative steps to discipline or otherwise properly supervise their staff who violated inmates'/detainees right to adequate medical care and/or effectively train them regarding  their constitutional duty. *Ibid*.  As a direct and proximate result of the Defendants' malicious, intention and reckless acts and omissions, they are liable for Decedent's injuries and death.

### C.   DEFENDANTS ARE LIABLE FOR NEGLIGENCE, GROSS NEGLIGENCE AND VICARIOUS LIABILITY, WHILE DEFENDANT PRIMECARE ALONE IS LIABLE FOR CORPORATE AND GROSS NEGLIGENCE.

In this matter, the negligence, gross negligence, and/or carelessness of Defendant PrimeCare Medical, Inc., Defendants Weber and Hoffman, as well as the Individual Medical Providers was egregious.  Among other things, they failed to:  to recommend appropriate diagnostic testing and/or treatment for Decedent's repeated head injuries; to recognize the significance of the patient's ongoing and worsening symptoms of headache, difficulty sleeping, difficulty breathing, high blood pressure, and chest pain;  to properly monitor the Decedent; to attempt to rule out subdural hematoma; to follow known and appropriate medical standards of care with regard to repeated head injuries and Decedent's symptoms; to recognize the Decedent's condition was failing to improve and/or was worsening; to properly treat the Decedent's traumatic brain injuries; to notice the signs and symptoms of traumatic brain injury; and to adequately and appropriately evaluate the Decedent's clinical symptoms [ECF 27, ¶ 136].

The Defendants, individually and acting through their agents, undertook and/or assumed a duty to render reasonable medical care to Decedent [ECF 27, ¶ 137]. Decedent relied upon the knowledge skill, treatment and advice of these Defendants to his detriment [ECF 27, ¶ 138]. the Defendants negligence, gross

negligence and/or carelessness caused Decedent harm and was a substantial factor causing Decedent's injuries and wrongful death [ECF 27, ¶ 139]. Decedent. Moreover, Defendant PrimeCare Medical is liable pursuant to the principles of agency, ostensible agency, vicarious liability and/or *respondeat superior* for the negligence of the Individual Medical Providers [ECF 27, ¶140].

Next, Defendant PrimeCare is uniquely liable for corporate and gross negligence.  Defendant PrimeCare's failures are glaring and include: the failure to properly train its employees and agents on the proper method for assessing and treating head injuries; the failure to properly train its employees and agents to recognize the signs and symptoms of traumatic brain injury; the failure to oversee the Individual Medical Providers in their assessment and treatment of Decedent's head injuries; the failure to adopt, formulate, and/or enforce adequate rules, policies, and/or procedures to recognize the signs and symptoms of patients suffering from traumatic brain injury; the failure to competently oversee evaluation, treatment, and/or diagnostic testing of patients suffering from traumatic brain injury; the failure to select and train competent medical providers in the evaluation and treatment of head injuries; and failing to correct its improper and incomplete policies regarding evaluation, treatment, and/or diagnostic testing of inmates who suffer head injuries at the hands of other inmates or prison staff [ECF 27, ¶143].  Moreover, Defendant PrimeCare had actual and/or constructive

knowledge of these acts and omissions which caused harm and were substantial

factors in causing Decedent's injuries and wrongful death [ECF 27, ¶¶ 144-145].

Accordingly, Defendant PrimeCare is liable for direct corporate negligence, gross

negligence, and/or carelessness, in violation of this State's common law.

      **D.**    **THE TOTALITY OF THE CIRCUMSTANCES COMPEL THE CONCLUSION THAT THE DEFENDANTS PARTICIPATED IN A CIVIL CONSPIRACY TO VIOLATE DECEDENT'S CONSTITUTIONAL RIGHTS.**

Plaintiff submits that a conspiracy requires: a combination of two or more

persons acting with a common purpose to commit an unlawful act; an overt act done

in furtherance of the common purpose; and actual damages. *See Jutrowski v. Twp.*

*of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (quoting *Barnes Found. v. Twp.*

*of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)). The facts alleged must raise "a

suggestion of a preceding agreement, not merely parallel conduct that could just as

well be independent action." *See Twombly*, *supra*, 550 U.S. at 557. Circumstantial

evidence is sufficient to prove the existence of a civil conspiracy, because a plaintiff

rarely has access to direct evidence of a conspiracy. *Chambers v. Pennsylvania*, No.

1:04-cv-0714, 2006 U.S. Dist. LEXIS 93658, at *29-30 (M.D. Pa. Dec. 28, 2006)

(citing *Hampton v. Hanrahan,* 600 F.2d 600, 621 (7th Cir. 1979), *rev'd in part on*

*other grounds,* 446 U.S. 754 (1980)). Accordingly, an agreement to violate

Plaintiff's statutory rights may be "inferred from the circumstances." *See Stoneroad*

*v. Johnson,* 2020 U.S. Dist. LEXIS 63389 at *39 (M.D. Pa. Apr. 6, 2020). Thus, to withstand dismissal, it is sufficient if "a conspiratorial agreement can be inferred" from the facts alleged. *Western Mining & Mineral Co., v. Fox Rothchild LLP,* 615 F.3d 159, 178 (3d Cir. 2010).

In this case, the acts in furtherance of the conspiracy include, but are not limited to, omitting critical information regarding Decedent's injuries from his prison medical records, including the real reasons(s) the Decedent was being seen; ignoring or failing to document assaults in the Extraordinary Occurrence Reports; covering up assaults by Defendant COs and/or inmates; without sufficient evidence, blaming other inmates for the death of inmates in order to avoid liability; and ignoring or covering up the failure of the Defendants to provide adequate medical care to inmates [ECF 27, ¶129].

The Defendants have a contract with the Defendant Prison to provide medical services to inmates and detainees.  The two entities work in tandem and have a mutual interest in concealing internal violations. These are not simply parallel acts independent of each other.  Rather, they suggest a pre-planned playbook for handling and documenting Decedent's assault, medical records, death and press release. These were not simultaneous incidents that were coincidental, but a series of orchestrated responses that occurred over a period of time.  Moreover, the Defendant Prison's responses in this case are consistent with the its history of misrepresenting

and concealing the true facts regarding past constitutional violations, including medical personnel's deliberate indifference to prisoners' serious medical needs. Accordingly, all Defendants are liable for civil conspiracy to violate Decedent's constitutional rights with respect to excessive force and covering up the truth regarding his assault, injuries and death.

### E.  DEFENDANTS ARE LIABLE FOR DECEDENT'S DEATH PURSUANT TO 42 PA. C.S. §8301 and §8302.

This State's Wrongful Death Statute provides, in pertinent part:

> An action may be brought  . . . to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery. 42 Pa.C.S. § 8301(a).

Further, "the right of action . . . shall exist only for the benefit of the spouse, children or parents of the deceased . . . ." 42 Pa.C.S. § 8301(b).  In addition, damages may be recovered for "reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death." 42 Pa.C.S. § 8301(c).

As a direct and proximate result of the Defendants' actions and omissions, Decedent, his family, his minor son J.B.K., and his Estate have suffered severe pecuniary losses and damages, including funeral, burial, and estate administration

expenses.  Plaintiff claims damages suffered by the Estate by due to the death of Decedent, including:  the severe injuries to Decedent which resulted in his death; the anxiety horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses which Decedent suffered prior to his death; the loss of past, present, and future earning capacity suffered by Decedent, from the date of his death until the time in the future he would have lived had he not died as a result of the injuries he sustained; expenses for medical care, and the loss and total limitation and deprivation of his normal activities, enjoyment of life, pursuits, and life's pleasures from the date of his death until the time in the future he would have lived had he not died as a result of the injuries he sustained [ECF 27, ¶ 146].

This State's Survival Statute provides that "[a]ll causes of action or proceedings, real or personal, shall survive the death of the plaintiff  . . . ." See 42 Pa. C.S. § 8302.  Plaintiff seeks recourse under the Survival Act on behalf of the Decedent's Estate and other persons entitled to recover under law.  As a direct and proximate result of Defendants' wrongdoing, Plaintiff claims on behalf of the all damages suffered by the Estate by reason of the Decedent's death, including: Decedent's severe injuries that resulted in his death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses which Decedent suffered prior to his death; the loss of past, present, and future earning capacity suffered by Decedent, from the date of his death until the time in

the future he would have lived had he not died as a result of the injuries he

sustained; expenses for medical care; the loss and total limitation and deprivation

of his normal activities, enjoyment of life, pursuits, and life's pleasures from the

date of his death until such time in the future as he would have lived had he not

died as a result of the injuries sustained.

## V.  CONCLUSION

The Defendants distort the fact of Decedent's life threatening condition, his

numerous pleas for medical assistance, and the detailed and accurate description

with which he provided them when he complained about his injuries.  Defendants

ignore the fact that they had specific and repeated notice that Decedent's medical

condition was extremely serious and that it was quickly deteriorating.  Indeed, the

Hershey Medical Center records confirm that the Decedent previously to the

Individual Medical Providers that he felt like he "was bleeding into his brain."

Unlike the Defendants who are trained medical professionals, Decedent correctly

self-diagnosed his condition as the Hershey Medical Center records confirm that

Decedent suffered from a subdural hematoma.

At this stage in the litigation, the court must take Plaintiff's allegations as true,

as well as all reasonable inferences to be drawn therefrom.  Applying this standard,

Plaintiff's complaint survives Defendants' motion to dismiss.  Plaintiff requests that

the Court grant Plaintiff the opportunity, if needed, to amend his complaint after

the completion of discovery.

Respectfully submitted,

*Alan Denenberg*

By:   Alan E. Denenberg, Esq.
      ABRAMSON & DENENBERG, P.C.

*Leticia Chavez-Freed*

By:  Leticia C. Chavez-Freed, Esq.
      THE CHAVEZ-FREED LAW OFFICE

## **CERTIFICATION OF WORD COUNT**

Pursuant to Local Rule of Civil Procedure 7.8(b)(2), the undersigned hereby certifies that this Brief in Opposition to the Motion to Dismiss filed by Defendants PrimeCare Medical Inc., CEO Thomas Weber, Dr. Carl Hoffman, and the Individual Medical Defendants consists of **4447** words, excluding the caption. This certification is made in reliance upon the word count feature of the word processing system.

*Leticia Chavez-Freed*
Leticia C. Chavez-Freed, Esq.

## CERTIFICATE OF
## SERVICE

I, Alan E. Denenberg, an employee with the law firm of Abramson &

Denenberg, P.C., do hereby certify that on this 4th day of January 2023, I served a

true and correct copy of the foregoing Brief via ECF to all counsel of record:

_Alan Denenberg_

Alan E. Denenberg