IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JohnJuan White Administrator of the Estate | : | |
| of Jimmy King, Deceased | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| V. | : | NO. 1:22-cv-01241 |
| | : | |
| Dauphin County, et al., | : | JURY TRIAL DEMANDED |
| Defendants | : | |

**REPLY BRIEF OF DAUPHIN COUNTY AND WARDEN BRIGGS IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

AND NOW COME Dauphin County ("the County") and Warden Briggs ("Briggs") and file their Reply Brief in Support of their Motion to Dismiss Plaintiff's Amended Complaint and in response to Plaintiff's Brief in Opposition and state:

**Summary of Reply of Dauphin County and Warden Briggs To Plaintiff's Brief in Opposition**

Plaintiff's Counterstatement of Operative Facts contains conclusory statements and concessions demonstrating the inadequacies of Plaintiff's allegations against the County and Briggs. First, Plaintiff concedes that Inmate Caputo, not a corrections officer, assaulted Decedent on August 9, 2020. (DOC.40, p.1, ¶2). Plaintiff also admits that Decedent was examined for injuries, but the "Defendant medical staff" determined that Plaintiff was not injured and offered no treatment. *Id*.

1

Plaintiff does not allege that the correctional staff was responsible for diagnosing and documenting Decedent's injuries. Instead, Plaintiff concedes that the corrections staff documented the assault and sent Decedent for a medical examination. *Id*. Therefore, Briggs and the correctional staff did not "act like the Defendant medical staff." (DOC.40, p.1).

Next, Plaintiff concedes that multiple medical examinations were provided to Decedent while at the Prison. (DOC.40, p.2). Allegations related to improper medical examinations and care are directed to the Defendant medical providers, not Briggs or the County. (DOC.40, p.2, ¶¶1-2).

Turning to August 14, 2020, Plaintiff claims Decedent was allegedly assaulted by Inmate Strand, the named corrections officers, or up to ten (10) John/Jane Does. (DOC.40, p.2, ¶3). Plaintiff's Amended Complaint alleges that Decedent might have been assaulted by his cellmate (DOC.27, ¶29), yet Decedent's cellmate is not mentioned in Plaintiff's Brief in Opposition.

Plaintiff claims that an Extraordinary Occurrence Report related to the August 14, 2020 assault noted Decedent's disciplinary violation, but did not mention Decedent's injuries. Plaintiff concedes that the Extraordinary Occurrence Report was related to Decedent's incident involving Inmate Strand (DOC.40, p.2, ¶3) – not the alleged assault that occurred following the incident with Inmate Strand. *Id.*

While the majority of the remining factual averments are dedicated to allegations of inadequate medical care (DOC. 40, pp.3-4), Plaintiff concedes that corrections officers accompanied Decedent to the hospital and provided information to the hospital physicians. (DOC.40, p.4, ¶3).[1]

Next, despite his claim that corrections staff, including Briggs, were involved in a conspiracy to cover-up Decedent's injuries, Plaintiff concedes that Briggs shared information with the Coroner – including that Decedent was "struck four days prior to being found unresponsive." (DOC.40, p.5, ¶2).

Finally, Plaintiff states that "the County" held a press conference related to Decedent's death during which unnamed "County officials" stated that criminal charges would not be brought against Decedent's cellmate related to the August 9, 2020, assault. (DOC. 40, pp.5-6). Plaintiff does not allege that Briggs participated in the press conference. *Id.* Plaintiff does not allege that a County policy maker participated in the press conference. *Id.* Plaintiff's Amended Complaint does not raise any claims regarding the decision not to file criminal charges related to Decedent's death. (See, DOC. 27).

---

[1] Plaintiff relies on a conclusory statement, not raised in his Amended Complaint, that it is "more likely" that Decedent was assaulted by corrections officers on August 14, 2020. Plaintiff does not reconcile his conclusory statement with his admission that corrections officers advised physicians at the hospital that Decedent was struck in the head with an electronic tablet. Likewise, Plaintiff does not reconcile how corrections officers providing information to physicians treating Decedent fits his narrative that corrections staff "covered-up" Plaintiff's injuries.

In further response to Plaintiff's Brief in Opposition, Briggs and the County further state:

I. **Plaintiff Relies On An Incomplete Recitation Of The Plausibility Standard.**

Plaintiff alleges the County and Briggs demand that he proves his case and they ignore the plausibility standard in assessing Plaintiff's Amended Complaint. (DOC.40, p.7, ¶2). This in incorrect. First, the County and Briggs acknowledged that the factual allegations in Plaintiff's Amended Complaint must be accepted as true and all reasonable inferences from them. (DOC. 35, p.4). Courts, however, do not have to accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Further, where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Id*. at 679. The Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and culminating with the Supreme Court's decision in *Ashcroft*, pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive

a motion to dismiss. See, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009).

Plaintiff relies on summaries of the elements of causes of action and conclusory statements throughout his Opposition Brief. For example, Plaintiff alleges that Decedent was assaulted on August 14, 2023, by his cellmate, another inmate, or correctional staff. (DOC. 40, p.2). Plaintiff now claims that "it is more likely than not" that one of the Prison staff struck Decedent because other inmates were not disciplined. (DOC.40, p.9, ¶1). Plaintiff did not plead this averment in his Amended Complaint and offers no support for his conclusory statement. This is the type of statement and speculative averment the Court cannot accept simply because Plaintiff alleges it is true. The County and Briggs are not ignoring the plausibility standard for a motion to dismiss – they are stating the complete standard that is applicable to Plaintiff's Amended Complaint, and holding Plaintiff to that standard.

**II.     Plaintiff Failed To Cure His Insufficient Supervisory Liability Claim and Failure To Train Claim Against Warden Briggs.**

    a.     <u>Plaintiff relies on factual allegations not raised in his Amended Complaint.</u>

While arguing that Briggs and the County "miss the mark" related to Plaintiff's failure to plausibly plead a *Monell* claim against them, Plaintiff states, for the first time, that it is "more likely that one of the named Defendant prison staff struck Decedent." (DOC.40, p.9, ¶1). Plaintiff further alleges that, if Inmate Strand

struck Decedent, "there would likely be a disciplinary charge against Strand." *Id.* Plaintiff did not plead this factual averment/argument in his Amended Complaint. Instead, Plaintiff alleged that Decedent might have been assaulted by Inmate Strand, another inmate, or a correctional officer. (DOC. 27, ¶29). Plaintiff cannot raise arguments in his Opposition Brief that were not raised in his Amended Complaint. *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citations omitted). The Court should disregard Plaintiff's argument raised for the first time in his Opposition Brief.

   b. <u>Plaintiff did not respond to Warden Briggs's argument that his supervisory liability claims should be dismissed as duplicative to his *Monell* claims.</u>

Warden Briggs maintains that Plaintiff's supervisory liability claim should be dismissed as duplicative of the *Monell* claims raised against the County. (DOC. 35, pp.9). (See, *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316-17 (3d Cir. 2014), "Failure to claims —failure to train, failure to discipline, or failure to supervise — are generally considered a subcategory of policy or practice liability."). Plaintiff did not address this argument in his Opposition Brief. Because Plaintiff failed to address this argument, the argument raised by Briggs and the County should be deemed as unopposed. (See, *McCoy v. Edwards*, 2009 U.S. Dist. LEXIS 53071, 2009 WL 1794749, *4 (M.D. Pa.).

c.   *Plaintiff did not respond to Briggs's argument that the claims brought against him in his official capacity must be dismissed.*

Warden Briggs is sued in his official capacity. (DOC. 27, ¶13). Plaintiff's Amended Complaint does not clarify which claims are brought against Warden Briggs in his personal or official capacity. Briggs correctly stated that any official capacity claims against him are duplicative of claims against the County because the County is named as a Defendant. (DOC. 35, pp.18-19). Official capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Monell,* 436 U.S. at 690 n.55. Plaintiff did not address the argument in his Opposition Brief. Therefore, any claims against Briggs in his official capacity should be deemed unopposed by Plaintiff.

**III.   Plaintiff Failed To Cure His Insufficient Cause Of Action For Civil Conspiracy Against Warden Briggs.**

Briggs correctly states that to prevail on a conspiracy claim under §1983, a plaintiff must allege 'particularized facts' including the "period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose." *Dempsey v. Bucknell Univ.*, 2012 U.S. Dist. LEXIS 62043, *38 (M.D. Pa. 2012) (internal citations omitted). (DOC. 35, p.12). In response, Plaintiff incorrectly states that Briggs maintains that he cannot be liable for participating in an alleged conspiracy only because he was not present or personally involved in the assault on Plaintiff. (DOC. 40, p.14, ¶1). This is an incomplete

analysis of the deficiencies Briggs raised regarding Plaintiff's pleadings. For example, Briggs argued that, while Plaintiff alleged he (Briggs) "downplayed and ignored Decedent's injuries in Prison medical records" Plaintiff failed to sufficiently plead that he had access to Decedent's medical records or that he: (1) omitted the real reason(s) Decedent was being examined, or (2) he failed to document Decedent's injuries. (DOC. 35, p.13). Instead of addressing Briggs' challenge to his general pleadings, Plaintiff simply restated the same conclusory statements against Briggs. (DOC. 40, p.15, ¶2).

In an unsuccessful attempt to save his conspiracy claim against Briggs, Plaintiff cites to *Western Mining & Mineral Co., v. Fox Rothchild LLP*, 615 F.3d 159, 178, (3d Cir. 2010) for the proposition that to withstand dismissal, it is sufficient if "a conspiratorial agreement can be inferred" from the facts alleged. *Id*. Plaintiff's argument fails because he offers only a portion of the quote he relies on from *Western Mining*. The text, in its entirety, reads: "[w]e have held that to properly plead an unconstitutional conspiracy, **a plaintiff must assert facts** from which a conspiratorial agreement can be inferred." *Id*., (emphasis added) (citing *D.R. v. Middle Bucks Area- Vocational Tech Sch*., 972 F.2d 1364, 1377 (3d Cir. 1992)) (additional citations omitted). Further, the Third Circuit recognized that a conspiracy claim requires "enough factual matter (taken as true) to suggest that an agreement was made," in other words "plausible grounds to infer an agreement."

*Id.*, citing *Bell Atlantic Corporation* v. *Twombly*, 550 U.S. 544 at 556. Citing *Iqbal,* the Court stated that "we do not consider any conclusory allegations that there was 'a corrupt conspiracy,' 'an agreement,' or 'an understanding in place between the [Defendants]." *Id*. citing 129 S. Ct. 1937 at 1950). The Third Circuit rejected allegations similar to those made by Plaintiff to support his conspiracy claim. Applying the analysis from *Twombly,* the Court concluded that "Great Western's statement that 'Defendants likely engaged in a concerted action of a kind not likely to occur in the absence of an agreement' is inadequate to properly plead an agreement." *Id*. at 178. The Plaintiff in *Great Western* went as far as to allege that reviewing the factual allegations demonstrated an "unnatural parallelism" and a "quid pro quo relationship." *Id*. The Court rejected the plaintiff's allegations of a conspiracy, finding that it failed to make any factual contentions concerning conduct by the defendants. *Id.* Instead, the Court reiterated that to plead a conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve the purpose. *Id.* at 179 (citing *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989).

Here, Plaintiff relies on the type of general allegations and conclusory statements found to be insufficient in *Great Western*. Plaintiff alleges, generally, that up to fifty-three (53) individuals, including Briggs, **"entered into an agreement**

9

**and/or reached a meeting of the minds to violate Plaintiff's constitutional rights as described above."** (ECF DOC. 27, ¶128). (*Emphasis added*). Like the plaintiff in *Great Western*, Plaintiff tries to tie his allegations together by alleging "they [the acts of the Defendants] suggest a pre-planned scenario for handling and documenting Decedent's assault, medical records, prison records, and press release." (DOC. 40, p.15). Plaintiff failed to plead specific facts sufficient to show Briggs participated in a conspiracy.

### IV. Plaintiff Failed To Cure The Deficiencies In His *Monell* Claims against Dauphin County and Warden Briggs

Plaintiff's only claim against the County is a general claim for excessive force and "cover-up." (ECF DOC.27, ¶¶81-95). Plaintiff alleges the County and Briggs adopted and maintained a policy, custom, and/or practice of condoning and/or acquiescing to the violation of constitutional rights of citizens. (DOC. 40, p.11, ¶2). Plaintiff attempts to support this conclusory statement by relying on a media report from 2007, a complaint from ongoing litigation, and media reports from 2019. None are sufficient to support a *Monell* claim against the County or Briggs. Evidence of prior lawsuits "'without more, indicates nothing,' as 'people may file a complaint for many reasons, or for no reason at all,' and evidence that 'they filed complaints does not indicate that the policies that [plaintiff] alleges exist do in fact exist.'" *Pharaoh v. Dewees*, No. 14-3116, 2016 U.S. Dist. LEXIS 59668, 2016 WL 2593842, at *5

(E.D. Pa. May 4, 2016) (quoting *Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir. 1985)). Even settled lawsuits are not probative of custom because there is no finding of liability. See *Id.*; *Williams v. Velez*, No. 16-1593, 2017 U.S. Dist. LEXIS 72575, 2017 WL 2002015, at *6 (E.D. Pa. May 12, 2017). Therefore, Plaintiff's reliance on a complaint from an active case and two media reports (one sixteen (16) years old) is insufficient to demonstrate the County and Briggs maintained policies, procedures, or customs that violated constitutional rights.

In response to the County's argument that Plaintiff failed to plausibly plead corrections officers assaulted Decedent on August 14, 2020, Plaintiff claims that he is permitted to argue in the alternative - that Decedent might have been assaulted by his cellmate, another inmate, or corrections officers. (DOC. 40, p,8). Plaintiff does not explain how "arguing in the alternative" allows him to avoid the requirement for establishing individual liability under §1983 by demonstrating each defendant had personal involvement in the alleged wrongs. (See, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207, 1208 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs… Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."). Allegations of personal involvement must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Id*. Alleging a mere hypothesis that an

individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Id*. at 1208. Therefore, Plaintiff's choice to argue in the alternative does not absolve him of his burden of demonstrating Briggs and/or corrections officers were personally involved in assaulting Decedent on August 14, 2020.

In support of his theory of arguing in the alternative, Plaintiff cites *Indep. Enters, Inc., v. Pittsburgh Water & Sewer*, 103 F.3d 1165, 1175 (3d Cir. 1997). (DOC.40, p. 8, ¶3). In *Indep. Enters*, the Third Circuit examined the question of standing in an equal protection claim. *Id*. at 1175. Examining only the issue of standing, the Court held the plaintiff's equal protection claim must be examined independently of its contempt claim to determine if plaintiff had standing to puruse a claim. *Id*. at 1176. Nothing in [*Indep. Eters.*] suggests a plaintiff in a §1983 claim to avoid demonstrating that each defendant was personally involved in the alleged wrong.

## V. <u>Plaintiff Failed To Demonstrate That Briggs Is Not Entitled To Qualified Immunity.</u>

Plaintiff failed to show that Briggs is not entitled to qualified immunity. Plaintiff's argument can be summarized by two sentences. First, Plaintiff relies on a statement of law that it is unlawful for a prison to allow and/or acquiesce to practices, customs, and policies that violate prisoners' constitutional rights.

(DOC.40. p.18, ¶3). Second, Plaintiff lists, generally: excessive force; the failure to protect inmates; and the covering up of prison violations as suggested examples of unconstitutional practices, customs, and policies. *Id*. Plaintiff's analysis is insufficient. Plaintiff's Amended Complaint does not include a claim for failure to protect against Briggs. (See, DOC.27). While Plaintiff restates the factors the Court must consider when conducting a qualified immunity analysis, Plaintiff did not plausibly plead that Briggs participated in violating Decedent's clearly established constitutional right(s). (DOC. 40, p.16-19).

## VI. Plaintiff Did Not Respond To The Argument That Dauphin County and Briggs Are Immune To Plaintiff's State Law Claims.

Plaintiff's Amended Complaint brings state law claims for wrongful death and survival action against all Defendants. (DOC. 27, ¶¶146-148, 149-151). The County argued it is immune from Plaintiff's state law claims under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"). (DOC. 35, pp.20-21), (citing *Burkhart v. Knepper*, 310 F. Supp. 2d 734, 744 (W.D. PA.2004; dismissing §1983 claim brought through wrongful death and survival statutes because plaintiff did not allege intentional conduct, and was therefore unable to defeat PSTCA immunity). Likewise, Briggs argued that, as a County employee, he is entitled to immunity under the PSTCA. *Id*. at pp.20-21. Plaintiff did not respond to the arguments set forth by the County and Briggs. Therefore, Plaintiff's state law

13

claims against the County and Briggs in his official capacity should be deemed unopposed.

### VII. Plaintiff Should Not Be Permitted To Amend His Complaint A Second Time Against The County And Briggs.

Plaintiff filed a Complaint and an Amended Complaint against the County and Briggs.  Now, Plaintiff not only requests that this Court allow him to file a second amended complaint, but also request to file a second amended complaint after the close of discovery.  Plaintiff has not plausibly plead a theory of liability against the County or Briggs and should not be afforded a third opportunity to craft other theories of liability with the hope of surviving a motion to dismiss.

### VIII. Plaintiff's "Conclusion" Is Not Persuasive.

Plaintiff's "conclusion" serves as a summary of the arguments relied on throughout his Brief in Opposition.  Plaintiff states that the County and Briggs have offered only "circuitous challenges" to Plaintiff's complaint [sic] and that the County and Briggs "ignore the real issue" (suggesting there is only one issue in this case) while emphasizing "collateral and irrelevant facts."  (DOC.40, p.19, ¶1).  The remainder of Plaintiff's "conclusion" relies on statements that are not factual averments and cannot save deficient pleadings.   For example, Plaintiff alleges the County and Briggs "feign ignorance" to the "obvious" – that Decedent was murdered at Dauphin County Prison.  (DOC.40, p.19, ¶3). Plaintiff suggests that Briggs or the County (an entity) failed to bring criminal charges against the inmate who allegedly

14

struck Plaintiff with a tablet. This argument is meritless. Plaintiff did not plead, because he cannot, that Briggs or any named County defendant are authorized to file criminal charges. That is a role reserved to the District Attorney.

The inadequacy of Plaintiff's claims against the County and Briggs is best illustrated by one sentence offered by Plaintiff: "[t]his is an old playbook and compels the conclusion that Defendant Briggs participated in a conspiracy to deprive and cover up the violations of Decedent's constitutional rights." (DOC.40, pp.19-20). Again, this is the type of conclusory statement the Court cannot accept as true.

## IV.   Conclusion:

This Court should dismiss Plaintiff's claims against Dauphin County and Warden Briggs with prejudice.

                                                              Respectfully submitted,
                                                              LAVERY LAW

Dated:  January 18, 2023               ***/s/ Frank J. Lavery, Jr.***
                                                               Frank J. Lavery, Jr., Esquire
                                                              PA Bar ID 42370
                                                              Andrew W. Norfleet, Esq.
                                                              PA Bar ID 83894
                                                              flavery@laverylaw.com
                                                              anorfleet@laverylaw.com
                                                              (717) 233-6633
                                                              *Attorneys for Defendants Dauphin County and Warden Briggs*

# CERTIFICATE OF SERVICE

I, Aimee Paukovits, an employee with the law firm of Lavery Law, do hereby certify that on this 18th day of January, 2023, I served a true and correct copy of the foregoing Motion via ECF to all counsel of record.

                                              *s/ Aimee Paukovits*
                                              Aimee Paukovits
                                              Legal Assistant

*This document has also been electronically filed and is available for viewing and downloading from the ECF system.*