## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JohnJuan White, as Administrator of** | **: JURY TRIAL DEMANDED** |
| **the Estate of Jimmy King, Deceased** | **:** |
| **Plaintiff** | **: No. 1:22-cv-01241-CCC** |
| | **:** |
| **v.** | **:** |
| | **: CIVIL ACTION** |
| **Dauphin County et al.** | **:** |
| **Defendants** | **:** |

## PLAINTIFF'S BRIEF IN RESPONSE TO THE DAUPHIN COUNTY DEFENDANTS' MOTION TO DISMISS

**Abramson & Denenberg, P.C.**
By: Alan E. Denenberg, Esquire
Identification No: 54161
1315 Walnut Street, Suite 500
Philadelphia, PA 19107
(215) 546-1345

**The Chavez-Freed Law Office**
By: Leticia C. Chavez-Freed, Esquire
Identification No: 323615
2600 N. 3rd Street
Harrisburg, PA 17110
(717) 893-5698

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES                                          i

I.     INTRODUCTION                                           1

II.    STATEMENT OF THE ALLEGATIONS IN THE SAC  1

III.   LEGAL ARGUMENTS                                       4

    A.    Plaintiff has alleged sufficient facts to state a
        plausible Supervisory Liability claim
        against Briggs                                      4

    B.    Plaintiff has sufficiently alleged a Conspiracy
        Claim against Briggs                                9

    C.    Plaintiff's Wrongful Death and Survivor Claims
        are not barred by the Political Subdivision
        Tort Claims Act                                     14

    D.    Briggs is not entitled to Qualified Immunity        16

    E.    Plaintiff has sufficiently alleged a *Monell* claim  19

IV.    CONCLUSION                                            19

CERTIFICATION OF WORD                                        21

CERTIFICATE OF SERVICE                                       22

PROPOSED ORDER

## TABLE OF AUTHORITIES

| CASE | PAGE |
|---|---|
| *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) | 9 |
| *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572 (3rd Cir 2004) | 6, 7, 18 |
| *Conely v. Gibson*, 355 U.S. 41 (1957) | 12 |
| *Fagin v. Gilmartin*, 432 F.3d 276 (3rd Cir. 2005) | 5 |
| *Gallick v. United States*, 542 F. Supp. 188 (M.D. Pa. 1982) | 13 |
| *Ghebreselassie v. Coleman Sec. Services*, 829 F.2d 892 (9th Cir. 1987) | 13 |
| *Gilles v. Davis*, 427 F.3d 197 (3rd Cir. 2005) | 6 |
| *Good v. Dauphin County Social Services for Children and Youth*, 891 F.2d 1087 (3d Cir. 1989) | 17 |
| *Graham v. Conner,* 490 U.S. 386, 395 (1989) | 18 |
| *Hoagburg v. Harrah's Marinia Hotel Casino,* 585 F. Supp. 1167 (D.N.J. 1984) | 13 |
| *Huysers v. N.J. Dep't of Corr.,* 2021 U.S. Dist. LEXIS 121977 (D.N.J. June 30, 2021) | 8 |
| *Jackson v. Phelps*, 575 Fed. Appx. 79 (3rd Cir. Aug. 7, 2014) | 18 |
| *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280 (3rd Cir. 2018) | 9, 10, 14, 18 |
| *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) | 18 |
| *Maldet v. Johnstown Police Dep't.*, 2019 U.S. Dist. LEXIS 97533 (W.D. Pa. June 11, 2019) | 15, 16 |

*Markowitz v. Northeast Land Co.*, 906 F.2d 100 (3d Cir. 1990)    5

*McMillan v. Lycoming Cnty.*,
2024 U.S. Dist, LEXIS 15578 (M.D. Pa. Jan. 26, 2024)    16

*Morris v. Powers*, 628 A.2d 525 (Pa. Commw. 1993)    15

*Palakovic v. Wetzel*, 845 F.3d 209 (3rd Cir. 2017)    4 n. 2, 8

*Peters v. Jenney*, 327 F.3d 307 (4th Cir. 2003)    13

*Phillips v. County of Allegheny*, 515 F.3d 224 (3rd Cir. 2008)    8, 12

*Sample v. Diecks*, 885 F.2d 1099 (3rd Cir. 1989)    6, 18

*Saucier v. Katz,* 121 S.Ct. 2151 (2001)    17

*Stanziale v. Nachtomi (In re Tower Air, Inc.)*,
416 F.3d 229 (3rd Cir. 2005)    5

*Stoneking v. Bradford Area School District*,
882 F.2d 720 (3d Cir. 1989)    17

*Vasquez v. Hernandez*, 60 F.3d 325 (7th Cir. 1995)    9, 10

*Wade v. City of Pittsburgh*, 765 F.2d 405 (3rd Cir. 1985)    15

*White v. Dauphin Cnty.*,
2023 U.S. Dist. LEXIS 176416 (M.D. Pa. Sept. 29, 2023)    5, 17, 19

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)    4 n. 2

Third Circuit Model Jury Charge 4.6.1    6

Fed. R. Civ. P. 8    12, 13

## I.    INTRODUCTION

Defendants Dauphin County and Warden Briggs (hereinafter referred to collectively as "County Defendants" and individually as "County" and "Briggs") have filed a Rule 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC"). Specifically, the County has filed to dismiss the *Monell* claim (Count III), Wrongful Death (Count X) and Survivor Action (County XI) against it, and Briggs has filed to dismiss the Supervisory Liability Claim (Count V), Conspiracy Claim (Count VII), Wrongful Death (Count X) and Survivor Action (County XI) action against him.[1] For the reasons developed below, Plaintiff opposes both the County's and Brigg's Motion to Dismiss as to all counts.

## II.    STATEMENT OF THE ALLEGATIONS IN THE SAC

On August 7, 2020, Decedent, Jimmy King, (hereinafter "Decedent" or "King"), was arrested and incarcerated as a pretrial detainee in Dauphin County Prison on relatively minor offenses. (SAC, Doc. 75, ¶¶ 19, 20). Shortly thereafter, on August 9, 2020, King was assaulted by his cellmate, who punched him in the left eye, causing a contusion above the eyelid, and kicked him in the right rib area. (Doc. 75, ¶ 21). On August 14, 2020, King was again assaulted by being struck in

---

[1]    Significantly, Dauphin County Correctional Officer Rodriguez has not moved to dismiss the § 1983 Excessive Force Claim (Count I), Supervisory Liability Claim (Count V), Conspiracy Claim (Count VII), and State Law claims of Wrongful Death (Count X) and Survivor Action (Count XI) against him.

the head with a prison issued tablet, causing a contusion over his right eye. (Doc. 75, ¶¶ 30, 34). The SAC alleges that Correctional Officer ("C.O.") Rodriquez observed King pour an unknown liquid on another inmate, and as punishment, in retaliation for King's conduct struck him in the head with a tablet. (Doc. 75, ¶¶ 31, 32). The prison issued tablet that Rodriquez struck King with was listed as missing during a subsequent tablet count. (Doc. 75, ¶ 33).

As a result of Rodriquez striking King in the head with the tablet, King developed severe headaches, chest pains, and had difficulty breathing, and sleeping. (Doc. 75, ¶¶ 36, 38, 40). The headaches became so severe that on August 20, 2020, Correctional Officers reported to medical that King was screaming in pain in his cell. (Doc. 75, ¶ 39). The next day King was found unresponsive in his cell, and was taken to Hershey Medical Center, where he died from a Traumatic Brain Injury ("TBI") on August 29, 2020. Both the Hershey Medical Records and the Coroners Autopsy Report noted that approximately four days before being found unresponsive, King was struck in the head with a tablet. (Doc. 75, ¶¶ 45, 50).

An Extraordinary Occurrence Report was issued regarding the August 9, 2020, assault on King by his cellmate, and after Kings death the Dauphin County D.A. investigated the assault regarding potential murder charges against the cellmate but found the assault was in self-defense and therefore no criminal charges were filed. (Doc. 75, ¶¶ 51, 54). Defendant Dauphin County also issued an

Extraordinary Occurrence Report regarding the August 14, 2020, incident which only mentions that King threw liquid on another inmate and fails to mention the assault on King with a tablet notwithstanding that Warden Briggs knew that King had been struck in the head with a tablet. (Doc. 75, ¶¶ 52, 53, 55, 56). As the SAC alleges, Warden Briggs knew that approximately four days prior to being found unconscious King was struck in the head with a tablet, and "informed the Coroner that 'the decedent was struck four days prior to being found unresponsive'". (Doc. 75, ¶¶ 52, 56). Despite the County's and Brigg's knowledge that King had been struck in the head with a tablet on August 14, 2020, "there is absolutely no record of this incident and Warden Briggs, and other Defendant's deny that it occurred." (Doc. 75, ¶ 56). Because the August 14 assault was omitted from the Extraordinary Occurrence Report, and Briggs denied that it occurred and failed to document it, the Dauphin County D.A. never investigated the August 14, 2020, assault on King for potential criminal charges. (Doc. 75, ¶ 54).

Regarding the County's and Briggs failure to document or even officially acknowledge the August 14 assault, the SAC alleges:

> 53.    The failure to mention the assault by Defendant Correctional Officer Rodriquez in the Extraordinary Occurrence Report regarding the August 14, 2020 incident was part of the conspiracy to coverup the facts relating to the Decedent's death and to protect the County from liability.

> 55.    The failure to document the August 14, 2020 assault on the decedent in the Extraordinary Occurrence Report,  . . . is part of an ongoing conspiracy between and among all Defendants to cover up the

facts related to King's death, including who was involved in the August 14, 2020 assault.

57.    All Defendants have conspired to cover-up the August 14, 2020 assault on King by Defendant Correctional Officer Rodriquez, and to blame his death on the August 9, 2020 assault, despite the evidence to the contrary.

(Doc. 75, ¶¶ 53, 55, 57).

## III.    LEGAL ARGUMENTS[2]

### A.    Plaintiff has alleged sufficient facts to state a plausible Supervisory Liability claim against Briggs.

Defendants argue that the Supervisory Liability Claim against Briggs should be dismissed because it is "duplicative to Plaintiff's *Monell* claims", and "fails to show that Warden Briggs was personally involved in the August 14 incident." Defs' Brief at 12, 13. Before addressing the above arguments, it should be noted that in its opinion granting Defendants 12(b)(6) Motion to the Supervisory Liability Claim in the Amended Complaint ("AC"), the Court held that because Plaintiff had not sufficiently pled that a correctional officer assaulted King on

---

[2]    The standard of review on a 12(b)(6) Motion to Dismiss is well established and familiar to both the Court and all counsel and therefore doesn't need repeating in full here. Briefly, Plaintiff's SAC only needs to provide a short and plain statement of the claim sufficient "to 'give the defendant fair notice of what the  . . .claim is and the grounds upon which it rests.'" *Palakovic v. Wetzel*, 845 F.3d 209, 219 (3rd Cir. 2017) (internal cite omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

August 14th and hence had not alleged a constitutional violation, Briggs could not be held liable as a Supervisor. *White v. Dauphin Cnty.*, 2023 U.S. Dist. LEXIS 176416 at *13 (M.D. Pa. Sept. 29, 2023). Unlike the AC, the SAC unequivocally alleges that C.O. Rodriguez assaulted King with the tablet in retaliation for his dumping of a liquid on another inmate. (Doc. 75, ¶¶ 31, 32).

Defendants argue that the allegations in the SAC regarding C.O. Rodriguez's assault on the Plaintiff should not be considered because they are "speculation". Defs' Brief at 11. Contrary to the Defendant's contention, a court must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990). Accordingly, for the purposes of the instant Motion, in analyzing the Plaintiff's claims the Court must accept as true the allegations in the SAC related to C.O. Rodriguez assaulting King with a tablet. *Id.* Moreover, while Defendants do not contend that Rodriguez did not do it, their contention that the allegation is "speculation" is a defense. It is well-settled law that that "'the existence of a defense does not undercut the adequacy of the claim' on a Rule 12(b)(6) motion to dismiss", *Fagin v. Gilmartin*, 432 F.3d 276, 284 n. 1 (3rd Cir. 2005), and accordingly the existence of a potential defense does not generally "trigger the dismissal of a complaint under Rule 12(b)(6)." *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3rd Cir. 2005). Unlike the AC, the SAC

5

therefore sufficiently pleads that C.O. Rodriguez violated King's constitutional rights by striking him on the head with a tablet.

In terms of the argument that the Supervisory Liability Claim is redundant of the *Monell* claim and fails to allege the personal involvement of Briggs in Rodriguez's use of excessive force, Defendants misstate and misapply the law. Third Circuit Model Jury Charge 4.6.1 includes individual liability for supervisors who "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation." The Jury Charge goes on to set-forth the factors required to establish a supervisory liability claim against an individual based on the adoption by a supervisor of an unconstitutional custom, practice or policy, and also the failure to adopt a custom, practice or policy or follow one. Third Cir. Model Jury Charge 4.6.1. This Jury Charge is based on well-established Third Circuit precedent. *Sample v. Diecks*, 885 F.2d 1099, 117-18 (3rd Cir. 1989); *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3rd Cir 2004); *Gilles v. Davis*, 427 F.3d 197, 207 n. 7 (3rd Cir. 2005).

While establishing this basis for supervisory liability is very similar to establishing a *Monell* claim, contrary to Defendants' contention, they are distinct causes of action, one imposing liability on an individual for an unconstitutional custom, practice or policy, and the other imposing liability on a governmental

entity for an unconstitutional custom, practice or policy. *Id.* Moreover, stating a claim under this theory of liability does not require the "personal involvement" of the supervisor in the unconstitutional act, but instead only requires that the supervisor have policymaking authority. *A.M. ex rel. J.M.K.*, 372 F.3d at 586.

The SAC expressly alleges that Briggs "was the final policymaker for Dauphin County Prison." (Doc. 75, ¶ 13). It further sufficiently alleges a Supervisory Liability Claim against Briggs. As stated above, the SAC alleges that C.O. Rodriguez assaulted King in retaliation for dumping a liquid on another inmate. (Doc. 75, ¶¶ 31, 32). Rodriguez's assault of King was based on Briggs failure to adopt and enforce appropriate use of force procedures, policies, and training. (Doc. 75, ¶¶ 100, 102(a)). In support of these allegations, the SAC alleges that in 2007 the Dauphin County D.A. investigated approximately twenty allegations of excessive force by Correctional Officers against pretrial detainees/inmates. (Doc. 75, ¶ 105(a)). The use of excessive force by C.O.'s continued, and the SAC cites a lawsuit filed in 2020 regarding the use of excessive force by C.O.'s, and an internet article in which journalist document other beatings by C.O.'s in 2018 and 2019. (Doc. 75, ¶ 105(b) and (c)). Based on this documented history regarding the use of excessive force by C.O.'s at Dauphin County Prison, the SAC alleges that Briggs was "deliberately indifferent to the rights of citizens

[housed in Dauphin County Prison] to be free from excessive force". (Doc. 75, ¶ 101).

These allegations are sufficient to allege a plausible Supervisory Liability Claim against Briggs and provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element". *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3rd Cir. 2008); *Palakovic v. Wetzel*, 854 F.3d 209, 229 (3rd Cir. 2017) (Plaintiffs "have presented allegations sufficient to state a plausible claim warranting discovery."). Plaintiff should be permitted the opportunity to discover Dauphin County Prison's exact policies/training regarding the use of force by C.O.'s, the history of complaints against the Prison regarding the use of excessive force by C.O.'s and C.O. Rodriguez's personnel file, including any complaints against him for the use of excessive force and any disciplinary action taken against him. *Huysers v. N.J. Dep't of Corr.,* 2021 U.S. Dist. LEXIS 121977 at *6-7 (D.N.J. June 30, 2021) ("[Plaintiff] cannot be expected to know, without discovery, exactly what training policies were in place or how they were adopted." Carter v. City of Philadelphia, 181 F.3d 339, 358 (3d Cir. 1999). As Plaintiff asserts Defendant Grossman had a history of using excessive force within the facility, Plaintiff may be able to prove Moving Defendants acquiesced to this conduct, all the while knowing Defendant Grossman was likely

to engage in excessive force again."). Accordingly, Briggs Motion to Dismiss the Supervisory Liability Claim (Count V) should be denied.

**B.    Plaintiff has sufficiently alleged a Conspiracy Claim against Briggs.**

Briggs argues that Plaintiff did not sufficiently allege a Conspiracy Claim against him because Plaintiff fails "to demonstrate that Warden Briggs was personally involved in or acquiesced to the use of excessive force against Decedent on August 14", and "offers no specific allegations to demonstrate Warden Briggs was personally involved in an unlawful act that injured the Decedent." Defs' Brief at 16. Contrary to Defendants' characterization, the Conspiracy Claim is not alleging that Briggs conspired with Rodriguez to use excessive force, but rather that Briggs conspired to cover up Rodriguez's use of excessive force thereby impeding Plaintiff's access to the courts. *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995) ("when police officers conceal or obscure important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged."); *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 (3rd Cir. 2018) (citing/relying upon *Vasquez*).

A § 1983 claim for Conspiracy requires plaintiff to plead facts from which it can be inferred that persons acting under color of state law "reached an understanding" to deprive the plaintiff of his constitutional rights. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970). In the context of conspiracies to cover

up the use of force by correctional officers or the police, the courts have held that the right of access to the courts is "denied when law enforcement officers conspire to cover up constitutional violations." *Jutrowski*, 904 F.3d at 294. As the Third Circuit has explained, a "'conspiracy of silence' among officers is actionable as a § 1983 conspiracy because the coordinated officer conduct 'impede[s] an individual's access to the courts' and renders 'hollow' a victims right to redress in a court of law." *Id*. at 294 (quoting *Vasquez*, 60 F.3d at 328-29). Restated, the Third Circuit has held that it is the fact of the cover up of the incident that results in the constitutional violation and renders hollow a victim's right to redress in courts. *Id*. The Court therefore expressly rejected the argument proffered by Briggs, namely that the object of the conspiracy must be related to the use of excessive force by Rodriguez, holding that "[t]he 'injury' Jutrowski asserts with respect to this conspiracy is not the application of excessive force but the denial of 'access to the courts.'" *Id*. at 296.

Plaintiff has clearly alleged sufficient facts from which it can be reasonably inferred that Briggs was involved in a conspiracy to cover up the assault by Rodriguez to impede the Plaintiff's access to the courts. First, Plaintiff has alleged facts from which it can inferred that there was "an understanding" or agreement to cover up the August 14 assault by Rodriguez. The SAC expressly alleges that Briggs, along with the other named Defendants, "entered into an agreement and/or

reached a meeting of the minds to violate Plaintiffs' constitutional rights" by "ignoring or failing to document assaults in Extraordinary Occurrence Reports" and "covering-up assaults by Correctional Officers". (Doc. 75, ¶¶ 121, 122). In further support of these allegations, the SAC alleges "[t]he failure to mention the assault by Defendant Correctional Officer Rodriguez in the Extraordinary Occurrence Report regarding the August 14, 2020 incident was part of the conspiracy to coverup the facts relating to the Decedents death and to protect the County from liability." (Doc. 75, ¶ 53; *see also* ¶¶ 55, 57).

More specifically, the SAC alleges that despite knowing that King had been struck in the head with a tablet approximately four days before he was found face down in his cell, "Dauphin County officials, including Warden Briggs" failed to mention the assault in the "Extraordinary Occurrence Report issued by the Dauphin County Prison" regarding the August 14 incident. (Doc. 75, ¶ 52). In addition, the SAC alleges that "there is absolutely no record of this incident and Warden Briggs, and the other Defendant's deny that it occurred." These allegations are sufficient to establish an agreement between Briggs and the other Defendants to cover up the August 14 assault by Rodriguez. *Jutrowski*, 904 F.3d at 296 ("For starters, material omissions in contemporaneous police reports can reasonably be seen by a jury as evidence that the officers 'agreed to abide by [a] claim' about what happened and 'agreed to represent [it] falsely'") (internal cite omitted).

11

The allegations are also sufficient to establish the object of the conspiracy, which is to impede the Plaintiff's access to the courts. *Jutrowski*, 904 F.3d at 294. The SAC specifically alleges that the Defendants entered into an agreement to violate Plaintiff's constitutional rights by failing covering up the August 14 assault on King. (Doc. 75, ¶¶ 121, 122). More specifically, Plaintiff alleges this was done "to protect the County from liability." (Doc. 75, ¶ 53). It certainly can be inferred from these allegations that the constitutional right that Plaintiff is referring to is access to the courts. While the Plaintiff did not specifically use the magic words "access to the courts", magic words are not required to state a claim pursuant to Fed. R. Civ. P. 8.

The Third Circuit has reaffirmed that Fed. R. Civ. P. 8 still "'requires only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'". *Phillips*, 515 F.3d at 231. The Court went on to state that "fair notice" often depends upon context or the type of case that is being alleged. *Id*. at 233. In applying the "fair notice" standard, the courts have "reject[ed] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits". *Conely v. Gibson*, 355 U.S. 41, 48 (1957). The courts have therefore held that in pleading a claim under Rule 8,

12

"technical exactness [is] not required", and the pleadings should be construed to do "substantial justice". *Gallick v. United States*, 542 F. Supp. 188, 190 (M.D. Pa. 1982); Fed. R. Civ. P. 8(e).

More specifically, in applying Rule 8 the plaintiff is not required to plead a legal theory or even whether the claim is under Federal or State law so long as the complaint puts the defendant on notice of a claim entitling the plaintiff to relief. *Ghebreselassie v. Coleman Sec. Services*, 829 F.2d 892, 895 (9th Cir. 1987), *cert. denied* 487 U.S. 1234 (1988); *Peters v. Jenney*, 327 F.3d 307, 321-22 (4th Cir. 2003). By way of example, in *Peters* the plaintiff brought a First Amendment claim but never cited the First Amendment, instead generally citing a "violation of the Fourteenth Amendment". *Peters*, 327 F.3d at 321-22. The Court held there is no heightened pleading requirement in civil rights cases, and notwithstanding that the complaint never mentioned the First Amendment, the plaintiff had "fully, if inartfully, pleaded the factual predicate for her First Amendment claim" and hence the defendants were given "fair notice" of the claim. *Id*. at 322; *see also Hoagburg v. Harrah's Marinia Hotel Casino*, 585 F. Supp. 1167, 1170-71 (D.N.J. 1984) ("This language hardly identifies which, if any, constitutional claims are being asserted. Nonetheless, the rules governing pleading in federal court are very liberal. If the facts, as alleged by a plaintiff, are sufficient to state a claim showing

13

he is entitled to any relief, he need not set forth the legal theory on which he relies.").

The Conspiracy Claim in the SAC alleges sufficient facts establishing that the constitutional right that is being referred to is unimpeded access to the courts by the Plaintiff. The claim is based on a cover up of the August 14 incident where King was assaulted by C.O. Rodriguez, and the purpose of that cover up was "to protect the County from liability" or to impede the Plaintiff from bringing a claim against the County. (Doc. 75, ¶ 53). These allegations are sufficient to put Briggs on fair notice of the "constitutional right" implicated in the Conspiracy Claim. As the Court held in *Jutrowski*, "'conspiracy of silence' among officers is actionable as § 1983 conspiracy because the coordinated officer conduct 'impede[s] an individual's access to the courts' and renders 'hollow' a victims right to redress in a court of law." 904 F.3d at 294. Accordingly, Briggs Motion to Dismiss the Conspiracy Claim should be denied.

### C.    Plaintiff's Wrongful Death and Survivor Claims are not barred by the Political Subdivision Tort Claims Act.

Briggs and the County argue that Wrongful Death (Count X) and Survivor Claims (Count XI) are barred by the Pennsylvania Political Subdivision Tort Claims Act (hereinafter "PSTCA"). Plaintiff has brought § 1983 claims against Briggs for Supervisory Liability and Conspiracy and against the County for *Monell*

liability all predicated on C.O. Rodriguez's unconstitutional use of force against King and the cover up that followed. It is well established that the PSTCA "although effective against a state tort claim, has no force when applied to suits under the Civil Rights Act" because "[t]he supremacy clause of the Constitution prevents a state from immunizing entities or individuals alleged to have violated federal law." *Wade v. City of Pittsburgh*, 765 F.2d 405, 407 (3rd Cir. 1985); *see also Morris v. Powers*, 628 A.2d 525, 527 n. 8 (Pa. Commw. 1993). Building on the Third Circuits holding in *Wade*, Courts have recognized that Wrongful Death/Survivor Claims based on constitutional claims brought pursuant § 1983 are not barred by the PSTCA. *Maldet v. Johnstown Police Dep't.*, 2019 U.S. Dist. LEXIS 97533 at *14-16 (W.D. Pa. June 11, 2019). The Court in *Maldet* explained that § 1983 and Wrongful Death/Survivor Claims "are vehicles to bring claims for redress, and not substantive claims in and of themselves", and precluding Wrongful Death/Survivor Claims brought under the constitution would undermine the purposes behind the Civil Rights Act:

> If the Court were to hold that the PSTCA barred Mr. Maldet's Estate from bringing § 1983 claims through the wrongful death and survival statutes, then Mr. Maldet's civil rights could never be vindicated. This seems to be an improper result, given that Mr. Maldet himself—had he survived—could have brought § 1983 claims in his own right. The purpose of § 1983—to redress civil rights violations—is frustrated if vindication of an individual's federal civil rights depends on that individual surviving the alleged violation.

*Maldet*, 2019 U.S. Dist. LEXIS 97533 at *15-16. Accordingly, because the Wrongful Death/Survivor Claims in the SAC are based on constitutional claims brought pursuant to § 1983, and not state tort law claims, they are not barred by the PSTCA.[3] *Id*.

Moreover, even if you construed the excessive force claim as assault and battery, which it clearly is not, Plaintiff's Wrongful Death/Survivor Claims against Briggs and the County still would not be barred by the PSTCA. The PSTCA "bars claims against municipal employees unless his or her conduct constitutes a 'crime, actual fraud, actual malice or willful misconduct.'" *McMillan v. Lycoming Cnty.*, 2024 U.S. Dist, LEXIS 15578 at *19 (M.D. Pa. Jan. 26, 2024). "Pennsylvania courts have held [willful misconduct] to be synonymous with the term intentional tort." *Id*. Because assault and battery is an intentional tort, Wrongful Death/Survivor Claims based on an assault and battery would not be barred under the PSTCA. *Id*. Accordingly, Plaintiff's Wrongful Death/Survivor Claims are not barred by the PSTCA.

### D.    Briggs is not entitled to Qualified Immunity

In this Court's analysis of the Qualified Immunity issue, it focused on the assault against King on August 14 and concluded that "White has not plausibly

---

[3]    This applies with equal force to the § 1983 Deliberate Indifference Claim Brought against the PrimeCare Defendants.

asserted any correctional officer assaulted King". *White*, 2023 U.S. Dist. LEXIS 176416 at *13. Because the Court determined that Plaintiff had failed to sufficiently allege a constitutional violation against any County Correctional Officer, it found that Briggs was entitled to Qualified Immunity on the Supervisory Liability and Conspiracy Claims.[4] *Id*.

As discussed above, unlike the AC, the SAC alleges a constitutional violation against C.O. Rodriguez; accordingly, the basis for granting Briggs Qualified Immunity has been cured. The second step in the Qualified Immunity analysis requires the Court to determine whether the right was clearly established at the time. *Saucier*, 121 S. Ct. at 2156. The dispositive inquiry in determining whether a right is clearly established "is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." *Id*. The Third Circuit has held that " in order for the governing law to be sufficiently well established for immunity to be denied, it is not necessary that there have been a previous precedent directly on point." *Good v. Dauphin County Social Services for Children and Youth*, 891 F.2d 1087, 1092 (3d Cir. 1989). It is enough if there is "some but not precise factual correspondence to the precedent." *Stoneking v.*

---

[4]     In granting Briggs Qualified Immunity on the Motion to Dismiss the AC, the Court focused on the first prong of the analysis, which requires the court to determine whether "the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz,* 533 U.S. 191, 121 S.Ct. 2151, 2156 (2001).

*Bradford Area School District*, 882 F.2d 720, 726 (3d Cir. 1989). "In determining whether a right was clearly established, [the court] "must consider the state of the existing law at the time of the alleged violation and the circumstances . . . to determine whether a reasonable state actor could have believed his conduct was lawful.'" *Jackson v. Phelps*, 575 Fed. Appx. 79, 82 (3rd Cir. Aug. 7, 2014).

The incident in this case took place in August of 2020. The law establishing Supervisory Liability based on a policy, practice or custom of a state actor with policy making authority was established well before 2020. *Sample*, 885 F.2d at 1117-18; *A.M. ex rel. J.M.K,* 372 F.3d at 586. Moreover, it has long been established "that the Due Process Clause protects a pretrial detainee from the use of excess force that amounts to punishment." *Graham v. Conner,* 490 U.S. 386, 395 n. 10 (1989). More recently, the Supreme Court elaborated on the contours of this right, holding that a pretrial detainees excessive force claim is governed by an objective standard and to state a claim "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). Based on the above, the law regarding Plaintiff's Supervisory Liability Claim against Briggs was clearly established before the incident alleged in the SAC.

Similarly, the law governing the Conspiracy Claim was also clearly established. The Third Circuits decision in *Jutrowski* was filed on September 12,

18

2018, and put Briggs on notice that covering up the use of excessive force by a prison guard constitutes a § 1983 conspiracy. Accordingly, Briggs is not entitled to Qualified Immunity on the Supervisory Liability and Conspiracy Claims.

> **E.    Plaintiff has sufficiently alleged a *Monell* claim.**

Plaintiff's *Monell* claim against Dauphin County is based on C.O. Rodriguez's use of unconstitutional force against King, and the County's cover up of Rodriguez's use of force. As Defendants note, the Court dismissed the *Monell* claim based on excessive force because Plaintiff had "not sufficiently pled that King's injuries resulted from any correctional officers use of force." *White*, 2023 U.S. Dist. LEXIS 176416 at *19. The SAC cures this pleading deficiency. Moreover, for the reasons discussed above regarding the Conspiracy Claim against Briggs, Plaintiff has sufficiently alleged facts from which it can be inferred that the cover up of Rodriguez's use of excessive force impeded the Plaintiff's access to the courts and therefore put the Defendant on fair notice of the claim. *See White*, 2023 U.S. Dist. LEXIS 176416 at *19. Accordingly, Plaintiff has sufficiently alleged a *Monell* claim against Dauphin County based on both Rodriguez's use of excessive force and the cover up of Rodriguez's use of excessive force.

## IV.    CONCLUSION

For the above-stated reasons County Defendants' Motion to Dismiss should be denied.

RESPECTFULLY SUBMITTED,


BY: s/ Alan Denenberg_____
ALAN DENENBERG, ESQUIRE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JohnJuan White, as Administrator of** | **: JURY TRIAL DEMANDED** |
| **the Estate of Jimmy King, Deceased** | **:** |
| **Plaintiff** | **: No. 1:22-cv-01241-CCC** |
| | **:** |
| **v.** | **:** |
| | **: CIVIL ACTION** |
| **Dauphin County et al.** | **:** |
| **Defendants** | **:** |

## CERTIFICATION OF WORD COUNT

Pursuant to Local Rule of Civil Procedure 7.8(b)(2), the undersigned hereby certifies that this *Plaintiff's Brief in Response to the County Defendant's Motion to Dismiss* is 4,759 words (excluding the Table of Contents and Table of Authorities). This Certification is made with reliance upon the word count feature of the undersigned's word processing system.

February 2, 2024                    BY: s/ Alan Denenberg
                                    ALAN DENENBERG, ESQUIRE

21

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JohnJuan White, as Administrator of** | **: JURY TRIAL DEMANDED** |
| **the Estate of Jimmy King, Deceased** | **:** |
| **Plaintiff** | **: No. 1:22-cv-01241-CCC** |
| | **:** |
| **v.** | **:** |
| | **: CIVIL ACTION** |
| **Dauphin County et al.** | **:** |
| **Defendants** | **:** |

## CERITIFICATE OF SERVICE

I, Alan Denenberg, Esquire, hereby certify that on February 2, 2024, I served a true and correct version of *Plaintiff's Brief in Response to the County Defendant's Motion to Dismiss* on all parties and counsel of record via the Court's electronic filing system or CM/ECF system, which service satisfies the requirements of the Federal Rules of Civil Procedure.

Date:  February 2, 2024

BY: s/ Alan Denenberg
ALAN DENENBERG, ESQUIRE

22

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JohnJuan White, as Administrator of** | : | **JURY TRIAL DEMANDED** |
| **the Estate of Jimmy King, Deceased** | : | |
| **Plaintiff** | : | **No. 1:22-cv-01241-CCC** |
| | : | |
| **v.** | : | |
| | : | **CIVIL ACTION** |
| **Dauphin County et al.** | : | |
| **Defendants** | : | |

**ORDER**

AND NOW, on this          day of          2024, after consideration of

the Dauphin County Defendants' 12(b)(6) Motion to Dismiss the Second Amended

Complaint and Plaintiff's Response thereto, it is hereby **ORDERED** that the

Motion is **DENIED**.

BY THE COURT:

_____

J.